UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - x

CAROLYN KNEESE, ALBERT AND      :
CYNTHIA GORDON, MICHAEL AND     :
LINA EISEMANN, CAROLINA         :
SFEIR, DIEGO BUSTAMANTE         :
                                :      Civil Action No. 3:10-cv-01908-N
            Plaintiffs,         :
                                :
        v.                      :
                                :
PERSHING, L.L.C.                :
                                :
            Defendant.          :
- - - - - - - - - - - - - - - - - - - - - - - - - X

# PERSHING LLC'S BRIEF IN SUPPORT OF
## ITS MOTION TO DISMISS

Rodney Acker
Ellen Sessions
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue
Suite 2800
Dallas, TX  75201-2784

Richard C. Pepperman II
(admitted pro hac vice)
Jeffrey J. Chapman
(admitted pro hac vice)
Stephen Ehrenberg
(admitted pro hac vice)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004

*Attorneys for Defendant Pershing
LLC*

November 12, 2010

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

THE COMPLAINT ..................................................................................................... 3

     A.    SGC and SIBL ........................................................................................ 3

     B.    Pershing's Lack of Involvement in the Sale of SIBL CDs ..................... 3

ARGUMENT .............................................................................................................. 6

I.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER TEXAS LAW
     AGAINST PERSHING FOR SALE OF UNREGISTERED SECURITIES. ..................... 7

     A.    Plaintiffs Fail to Allege Facts Sufficient to Establish That Pershing
          Substantially Assisted the Sales of SIBL CDs. ..................................... 8

     B.    Plaintiffs Fail to Allege Facts Sufficient to Show That Pershing Had
          General Awareness of Its Supposed Role in the Primary Violation or
          Acted with Either Intent to Deceive or Reckless Disregard for the Law. ............ 11

II.    UNDER WELL-SETTLED PRECEDENT, PERSHING CANNOT BE HELD
    LIABLE FOR THE ACTS OF SGC OR SIBL SIMPLY BECAUSE IT ACTED AS
    SGC'S CLEARING BROKER. ...................................................................... 18

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ashcroft* v. *Iqbal*,
129 S. Ct. 1937 (2009) .............................................................................................. passim

*Bane* v. *Sigmundr Exploration Corp.*,
848 F.2d 579 (5th Cir. 1988) ......................................................................................... 10

*Barnes* v. *SWS Fin. Servs.*,
97 S.W.3d 759 (Tex. App. – Dallas 2003, no pet.) .......................................................... 9

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007) ................................................................................... 6, 13, 15, 16

*Carlson* v. *Bear, Stearns & Co.*,
906 F.2d 315 (7th Cir. 1990) ................................................................................... 18, 19

*Carroll* v. *Fort James Corp.*,
470 F.3d 1171 (5th Cir. 2006) ..................................................................................... 16

*Connolly* v. *Havens*,
763 F. Supp. 6 (S.D.N.Y. 1991) ................................................................................... 17

*Crescendo Invs., Inc.* v. *Brice*,
61 S.W.3d 465 (Tex. App. – San Antonio 2001, no pet.) ........................................ 8, 9, 11

*Cromer Fin. Ltd.* v. *Berger*,
137 F. Supp. 2d 452 (S.D.N.Y. 2001) ............................................................................ 10

*Dorsey* v. *Portfolio Equities, Inc.*,
540 F.3d 333 (5th Cir. 2008) ................................................................................... 6, 16

*Fezzani* v. *Bear, Stearns & Co.*,
592 F. Supp. 2d 410 (S.D.N.Y. 2008) .................................................................. 10, 18, 19

*Flaherty & Crumrine Preferred Income Fund, Inc.* v. *TXU Corp.*,
565 F.3d 200 (5th Cir. Tex. 2009) ................................................................................... 6

*Frank* v. *Bear, Stearns & Co.*,
11 S.W.3d 380 (Tex. App. – Houston [14th] 2000, no pet.) ....................................... 8, 12

*Gould* v. *Am.-Hawaiian S.S. Co.*,
535 F.2d 761 (3d Cir. 1976) ......................................................................................... 12

*Greenberg* v. *Bear Stearns & Co.*,
220 F.3d 22 (2d Cir. 2000)...................................................................9, 18, 19

*Guerrier* v. *Advest, Inc.*,
No. 90-709, 1993 WL 90404 (D.N.J. Mar. 25, 1993)...........................10, 12

*In re Atl. Fin. Mgmt. Inc. Secs. Litig.*,
658 F. Supp. 380 (D. Mass. 1986) ...................................................................19

*In re Blech Sec. Litig. ("Blech I")*,
928 F. Supp. 1279 (S.D.N.Y. 1996)...................................................16, 17, 19

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,
540 F. Supp. 2d 759 (S.D. Tex. 2007) .................................................6, 13, 16

*In re Westcap Enters.*,
230 F.3d 717 (5th Cir. 2000) ...........................................................................9

*Ins. Co. of N. Am.* v. *Morris*,
981 S.W.2d 667 (Tex. 1998)...........................................................................12

*Levitt* v. *J.P. Morgan Secs., Inc.*,
No. 99-CV-2789 (ADS)(MLO), 2010 WL 2559401 (E.D.N.Y. 2010) .......19

*McDaniel* v. *Bear Stearns & Co.*,
196 F. Supp. 2d 343 (S.D.N.Y. 2002)...............................................2, 18, 19

*Morsen* v. *Consol. Dressed Beef Co.*,
579 F.2d 793 (3d Cir. 1978) ...........................................................................12

*Navarro* v. *Grant Thornton, LLP*,
316 S.W.3d 715 (Tex. App. – Houston [14th] 2010, no pet. h.)......................8

*Papasan* v. *Allain*,
478 U.S. 265 (1986)...........................................................................................6

*Riggs* v. *Schappell*,
939 F. Supp. 321 (D.N.J. 1996) ......................................................................19

*Ross* v. *Bolton*,
639 F. Supp. 323 (S.D.N.Y. 1986)...............................................................9, 19

*SFM Holdings, Ltd.* v. *Banc of Am. Secs., L.L.C.*,
600 F.3d 1334 (11th Cir. 2010) .................................................................19, 20

*Sinaltrainal* v. *Coca Cola Co.*,
No. 06-15851, 2009 U.S. App. LEXIS 17764 (11th Cir. Aug. 11, 2009) .......6

*Southland Sec. Corp.* v. *INSpire Ins. Solutions Inc.*,
   365 F.3d 353 (5th Cir. 2004) ..................................................................... 6, 17

*Stander* v. *Fin. Clearing & Servs. Corp.*,
   730 F. Supp. 1282 (S.D.N.Y. 1990) ............................................................. 9, 17

*Sterling Trust Co.* v. *Adderley*,
   168 S.W.3d 835 (Tex. 2005) ........................................................................ passim

*Strategic Income Fund, L.L.C.* v. *Spear, Leeds & Kellog Corp.*,
   305 F.3d 1293 (11th Cir. 2002) ................................................................... 18

*Thomas* v. *State*,
   65 S.W.3d 38 (Tex. Crim. App. 2001) ......................................................... 9

*Tuchman* v. *DSC Commc'ns Corp.*,
   818 F. Supp. 971 (N.D. Tex. 1993) ............................................................. 16, 17

*Warren* v. *Tacher*,
   114 F. Supp. 2d 600 (W.D. Ky. 2000) ......................................................... 18

*Woodward* v. *Metro Bank of Dallas*,
   522 F.2d 84 (5th Cir. 1975) ........................................................................ 12, 13, 14

## STATUTES

Tex. Civ. Stat. Ann. art. 581, § 7A(1) ........................................................ 1, 7

Tex. Civ. Stat. Ann. art. 581, § 33A(2) ...................................................... 7, 15

Tex. Civ. Stat. Ann. art. 581, § 33F(2) ...................................................... passim

## OTHER AUTHORITIES

Fed. R. Civ. Pro. R. 8 .................................................................................. 16

Fed. R. Civ. Pro. R. 9(b) ............................................................................. 16, 17

Fed. R. Civ. Pro. R. 12(b)(6) ...................................................................... 1, 6, 20

Unif. Sec. Act 2002 § 509, cmt. 11 ............................................................ 10

Defendant Pershing LLC ("Pershing") submits this brief in support of its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs seek to rescind their alleged purchases of certificates of deposit ("CDs") issued by Stanford International Bank, Ltd. ("SIBL") from SIBL's affiliated broker-dealer, Stanford Group Company ("SGC").  (Compl. ¶¶ 8-9.)[1]  Plaintiffs claim that the CDs were unregistered securities sold in violation of article 581-7 of the Texas Securities Act ("TSA").  (Compl. ¶¶ 38-39.)

Although the TSA permits a private right of action for rescission against issuers and sellers of unregistered securities, *see* TEX. CIV. STAT. art. 581, § 33F, Plaintiffs do not seek rescission from either the issuer (SIBL) or the seller (SGC) of the CDs.  Rather, Plaintiffs seek rescission under Texas law from Pershing, a clearing broker that, at most, provided ministerial and routine services after Plaintiffs already had decided to purchase an SIBL-issued CD from a SGC broker.

Plaintiffs fail to state a claim upon which relief can be granted for at least three independent reasons.  First, Plaintiffs fail to allege facts establishing that Pershing "substantially assisted" the sales of SIBL CDs, as required by the TSA.  Plaintiffs instead simply allege that Pershing performed routine and ministerial clearing activities as clearing broker for SGC (although they do not even allege that Pershing cleared the SIBL CDs in question).  (Compl. ¶¶ 22-25.)  The performance of such activities is insufficient to establish "substantial assistance."  In addition, Pershing's limited involvement in the sales of SIBL CDs, if any, uniformly occurred only *after* Plaintiffs allegedly decided to purchase their CDs and thus could not constitute "substantial assistance" with respect to such sales.

---

[1]      References to "Complaint" or "Compl." are to the Complaint filed by Plaintiffs on September 23, 2010.  (*See* Docket No. 1).

Second, Plaintiffs fail to allege facts sufficient to demonstrate that Pershing was aware of its alleged role in the sale of unregistered securities and/or acted with either intent to deceive or reckless disregard of the law. Secondary liability may be imposed under the TSA "only if the aider has the requisite scienter." *Sterling Trust Co.* v. *Adderley*, 168 S.W.3d 835, 843 (Tex. 2005) (citations omitted). The Complaint fails to allege that Pershing knew of the facts that, according to Plaintiffs, required the CDs to be registered, and the facts that are alleged cannot plausibly demonstrate a culpable mental state. Plaintiffs' conclusory allegations that Pershing "knew or should have known" that SIBL and SGC sold unregistered securities, and that Pershing at all times "acted with conscious indifference and with reckless disregard" (Compl. ¶¶ 27, 32), are insufficient as a matter of law. *See Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

Third, as a clearing broker, Pershing cannot be held liable for the acts of SGC or SIBL. Under circumstances similar to those here, courts have dismissed a wide variety of state and federal claims against clearing brokers, holding that, "when a clearing firm acts merely as a clearing agent, it . . . cannot be held liable for the acts of an introducing firm"—even if the clearing firm allegedly knew of the illegal acts and continued to provide clearing services. *McDaniel* v. *Bear Stearns & Co.*, 196 F. Supp. 2d 343, 352 (S.D.N.Y. 2002) (citing cases). Apparently aware of this well-settled law, Plaintiffs respond only with a bald legal conclusion that Pershing "acted beyond the scope" of its functions as a clearing broker. (Compl. ¶ 35.) This legal conclusion, unsupported by any well-pled allegations of fact, is insufficient to state a claim. *Iqbal*, 129 S. Ct. at 1949. Based on the overwhelming authorities holding that clearing brokers cannot be held liable for performing their traditional professional services, Plaintiffs' claim should be dismissed.

## THE COMPLAINT

### A.    SGC and SIBL

Plaintiffs allege that they purchased CDs issued by SIBL, a private bank located in

Antigua, West Indies. (Compl. ¶ 8.) According to the Complaint, all the CDs were sold by and

through SGC, a broker-dealer and investment advisor registered with the SEC and the State of

Texas. (*Id.* ¶ 9.) Plaintiffs allege that R. Allen Stanford controlled SIBL and SGC and, through

these entities' sale of CDs, "engaged in a massive Ponzi scheme" that "misappropriated billions of

dollars." (*Id.* ¶ 12.) Plaintiffs do not specify when, from whom, or at whose suggestion they

supposedly purchased the SIBL CDs.

Plaintiffs contend that SGC's sale of the SIBL-issued CDs was "an illegal,

unregistered public offering" of securities (*id.* ¶ 15) that were not subject to regulatory schemes

similar to the United States or Texas. (*Id.* ¶ 16). Although the CDs were purportedly offered

pursuant to an exemption from registration for private offerings under the TSA, Plaintiffs argue that

SIBL and SGC in fact offered them under circumstances that required registration. (*Id.* ¶¶ 17, 18.)

According to the Complaint, SIBL, "through SGC and its U.S. affiliates, agents and brokers,"

offered the CDs through "general solicitation" by public advertisements, sales seminars, and broad

distributions to "thousands of offerees." (*Id.* ¶ 18.) Plaintiffs assert that offerings were generally

made to "investors with whom SGC had no pre-existing relationship, through brokers of an affiliate

of SGC." (*Id.*)

### B.    Pershing's Lack of Involvement in the Sale of SIBL CDs

Plaintiffs allege that, "[t]hroughout the relevant time period, SGC 'cleared' all of its

business, including its Texas business, through Pershing." (*Id.* ¶ 21.) Missing from these

allegations, however, is any suggestion that Pershing sold SIBL CDs on SGC's or SIBL's behalf or

that Pershing somehow assisted in those sales.  In fact, Plaintiffs do not even allege that Pershing reflected such CDs on any customer statements generated by Pershing.

Although Plaintiffs baldly assert that Pershing "actively participated and aided in the sale of the unregistered CDs, and engaged in conduct that induced purchasers to invest in CDs" (*id.* ¶ 22), the Complaint is devoid of any factual allegations to support those assertions.  Rather, Plaintiffs allege that Pershing performed typical functions of any clearing broker, such as making wire transfers for SGC customer accounts (*id.* ¶¶ 22, 23), issuing confirmations and statements reflecting those wire transfers (*id.* ¶ 24), and providing loan and margin financing to SGC customers (*id.* ¶ 25).  Plaintiffs do not even allege that Pershing cleared, custodied or reflected on SGC customers' account statements the SIBL CDs at issue.  Notwithstanding Pershing's limited role, Plaintiffs contend that Pershing, as clearing broker, aided and abetted the sale of unregistered securities in violation of article 581-33F of the TSA.  (*Id.* ¶¶ 36-46.)

As the basis for these claims, Plaintiffs assert that Pershing "acted with conscious indifference and with reckless disregard to the fact that offering the CDs through SGC was an illegal, unregistered public offering" (*id.* ¶ 27), and that Pershing "knew or should have known" the sale of the CDs was an unregistered sale (*id.* ¶ 32).  In particular, Plaintiffs assert that Pershing "acted with conscious indifference to the fact that SIB[L] and SGC were engaged in aggressive sales inconsistent with the limitations on private placements pursuant to Texas law." (*Id.* ¶ 29.) Plaintiffs also allege that Pershing ignored "numerous red flags" that should have caused Pershing "to realize that SIB[L] was involved in a scam." (*Id.* ¶¶ 31, 33.)  Based on these scant allegations, Plaintiffs assert that SIBL's and SGC's sale of unregistered CDs "could not have been made but for Pershing's participation and aid." (*Id.* ¶ 33.)  Plaintiffs also conclude, without any factual support,

that "Pershing acted beyond the scope of its ministerial and ordinary administrative functions as a clearing firm." (*Id.* ¶ 35.)

Plaintiffs do not explain how any of these so-called "red flags" support the claim of alleged wrongdoing asserted in the Complaint:  aiding and abetting the unlawful sale of unregistered securities.  While Plaintiffs make detailed allegations about why the CDs should have been registered (*e.g., id.* ¶ 18), they do not allege facts that show Pershing knew these facts or otherwise concluded that the CDs were required to be registered but were not.  Plaintiffs also do not allege facts that demonstrate that Pershing was aware that the CDs did not satisfy the requirements for the exemption pursuant to which SIBL and SGC purported to offer the CDs.  Likewise, Plaintiffs fail to allege that Pershing (i) knew about or participated in SGC's alleged "general solicitation" of the SIBL CDs, (ii) was involved in the development of any sales literature, (iii) viewed any documents or advertisements related to the offering or sale of the CDs, (iv) knew whether any purchasers of the CDs were sophisticated investors, (v) attended any sales seminars at which SIBL and SGC solicited purchasers, or (vi) was even aware of the circumstances under which SIBL and SGC offered the CDs for sale.

Plaintiffs further allege that "[t]he CDs were offered and sold by means of untrue statements of material fact, or an omission to state a material fact necessary to make the statements made not misleading." (*Id.* ¶ 40.)  They also assert that Pershing aided SGC "in the sale of securities by untruth or omission, with intent to deceive or defraud, or with reckless disregard for the truth or law." (*Id.* ¶ 38.)  The Complaint, however, fails to provide any factual support for these assertions—Plaintiffs do not describe the content of any alleged untrue statements or omissions, the identity of the alleged speaker, when and where the alleged statements were made, or to whom they

were made. Most importantly, they fail to allege that Pershing made any such statements or assisted SGC or SIBL in making any false statements.

## ARGUMENT

"Rule 12(b)(6) authorizes dismissal of a complaint for 'failure to state a claim upon which relief can be granted.'" *Flaherty & Crumrine Preferred Income Fund, Inc.* v. *TXU Corp.*, 565 F.3d 200, 206 (5th Cir. Tex. 2009) (citing FED. R. CIV. P. 12(b)(6)).  In analyzing the complaint, the Court "accept[s] all well-pleaded facts as true." *Dorsey* v. *Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).  "This court, however, 'will not strain to find inferences favorable to the plaintiff.'" *Dorsey*, 540 F.3d at 338 (citing *Southland Sec. Corp.* v. *INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).  Moreover, "conclusory allegations and unwarranted factual deductions will not suffice." *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 759, 766 (S.D. Tex. 2007).  As the Supreme Court has stressed, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986).

To survive a motion to dismiss, the Complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  "The mere possibility the defendant acted unlawfully is insufficient . . . ." *Sinaltrainal* v. *Coca Cola Co.*, No. 06-15851, 2009 U.S. App. LEXIS 17764, at *13-*14 (11th Cir. Aug. 11, 2009).  The Complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

I.      **The Complaint Fails to State a Claim Under Texas Law Against Pershing for Sale of Unregistered Securities.**

Plaintiffs assert a single claim against Pershing under article 581-33(F) of the TSA. (Compl. ¶¶ 36-46.) They allege that the CDs were neither exempt nor properly registered, and that therefore SGC's offering violated article 581-7. (*Id.* ¶ 39.)[2] As part of the same claim, Plaintiffs also assert that the CDs "were offered and sold by means of untrue statements of material fact, or an omission to state a material fact necessary to make the statements made not misleading" and therefore constitutes a violation of article 581-33A(2).[3] (*Id.* ¶ 40.) Although Plaintiffs do not contend that Pershing issued or sold the CDs, they assert that Pershing is liable under article 581-33F(2), which provides:

> A person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth of the law materially aids a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer.

TEX. CIV. STAT. ANN. art. 581, § 33F(2).

To state a claim under this provision, Plaintiffs must allege that (i) a primary violation of the securities law occurred; (ii) the alleged aider "had 'general' awareness of its role in this violation"; (iii) the alleged aider rendered "substantial assistance" in the commission of the primary violation; and (iv) the alleged aider acted with either (a) intent to deceive or (b) "reckless

---

[2]     Under article 581-7, "[n]o dealer or agent shall sell or offer for sale any securities" unless the security is exempt or "until the issuer of such securities or a dealer registered under the provisions of this Act shall have been granted a permit by the Commissioner." TEX. CIV. STAT. ANN. art. 581, § 7A(1).

[3]     Article 581-33A(2) provides in relevant part:

> A person who offers or sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him . . . ."

TEX. CIV. STAT. ANN. art. 581, § 33A(2).

disregard for the truth of the representations made by the primary violator." *Frank* v. *Bear, Stearns & Co.*, 11 S.W.3d 380, 384 (Tex. App. – Houston [14th] 2000, no pet.). The Complaint fails to allege sufficient facts to satisfy the second, third and fourth elements of this claim.

A.   **Plaintiffs Fail to Allege Facts Sufficient to Establish That Pershing Substantially Assisted the Sales of SIBL CDs.**

Plaintiffs fail to allege that Pershing "materially aid[ed]" the sale of the unregistered CDs. Texas courts have held that this element requires a plaintiff to plead that the alleged aider rendered "substantial assistance" in the commission of the purported primary violation—here, SGC's allegedly unlawful sale of unregistered SIBL-issued CDs to Plaintiffs. *See, e.g., Navarro* v. *Grant Thornton, LLP*, 316 S.W.3d 715, 720-21 (Tex. App. – Houston [14th] 2010, no pet. h.) (citing *Frank*, 11 S.W.3d at 384); *Crescendo Invs., Inc.* v. *Brice*, 61 S.W.3d 465, 473 (Tex. App. – San Antonio 2001, no pet.). Although Plaintiffs assert that Pershing "actively participated and aided in the sale of the unregistered CDs, and engaged in conduct that induced purchasers to invest in CDs" (Compl. ¶ 22), they allege no facts to support those assertions, relying instead only on Pershing's routine clearing activities and the supposed use of Pershing's "name and reputation to enhance SIB[L]'s and SGC's appearance of legitimacy." (*Id.* ¶¶ 22-25, 27.) Indeed, Plaintiffs do not even allege that Pershing custodied the SIBL CDs at issue or reflected them on account statements. Pershing's alleged role in the sales of the SIBL CDs was thus even more limited than the typical role of a clearing broker. Plaintiffs do not allege that Pershing's services as a clearing broker were somehow unique or contributed to SGC's sale of the CDs in any particular way. Nor are there allegations that persons wanting to purchase a CD had to send a wire or obtain a loan

through Pershing.  Thousands of financial institutions and firms send wire transfers and make loans.
Pershing's alleged activities are no different.[4]

Moreover, to the extent that Plaintiffs rely on Pershing's clearing activities as the
basis for their claim, these ministerial activities occurred *after* SIBL's and SGC's offer of the CDs
and *after* Plaintiffs' decisions to buy them—and thus could not have provided "substantial
assistance" in the alleged sale of the CDs.  Pershing does not make wire transfers for customer
accounts (*id.* ¶¶ 23-24), issue confirmations and statements reflecting these transfers (*id.* ¶ 24), or
extend credit or provide loans and margin financing (*id.* ¶ 25) until *after* a customer has made their
investment decision.  Pershing's clearing activities therefore could not constitute "substantial
assistance" in the *sale* of the CDs.  *See Crescendo*, 61 S.W.3d at 473 ("To be an aider and abettor,
there must be evidence of . . . substantial assistance of the violation with the necessary intent.").

More generally, the overwhelming weight of authority holds that providing
ministerial clearing services such as sending wires and making margin loans does not constitute
substantial assistance sufficient to render a party liable as an aider and abettor.[5]  *See, e.g., Stander* v.
*Fin. Clearing & Servs. Corp.*, 730 F. Supp. 1282, 1286 (S.D.N.Y. 1990) ("It is clear that the simple
providing of normal clearing services to a primary broker who is acting in violation of the law does
not make out a case of aiding and abetting against the clearing broker."); *Greenberg* v. *Bear Stearns
& Co.*, 220 F.3d 22, 28-29 (2d Cir. 2000); *Ross* v. *Bolton*, 639 F. Supp. 323, 327 (S.D.N.Y. 1986)

---

[4]    Indeed, Pershing's activities as clearing broker for SGC and its alleged connections to the sale of SIBL-issued
CDs are no different from, for example, a financial institution's activities as the custodian of the bank account that
Plaintiffs used to make their alleged CD purchases.

[5]    Federal case law on liability as an aider or abettor is persuasive because "Texas courts often look to federal
cases interpreting the Federal Securities [Act] for guidance in interpreting the Texas Securities Act." *Thomas* v. *State*,
65 S.W.3d 38, 42 (Tex. Crim. App. 2001); *see also In re Westcap Enters.*, 230 F.3d 717, 726 (5th Cir. 2000)
("[B]ecause the Texas Securities Act is so similar to the federal Securities Exchange Act, Texas courts look to decisions
of the federal courts to aid in the interpretation of the Texas Act.") (citations omitted); *Barnes* v. *SWS Fin. Servs.*, 97
S.W.3d 759, 763 (Tex. App. – Dallas 2003, no pet.) ("We may also look to the federal courts' interpretations of . . .
federal securities law in construing . . . liability under the TSA.").

("The complaint does not specify what assistance Bear Stearns rendered other than to continue to clear transactions when it 'knew or should have known' that the Bolton defendants were rigging the price of RUTI securities. 'Awareness and approval, standing alone, do not constitute substantial assistance.'") (citation omitted); *see also Guerrier* v. *Advest, Inc.*, No. 90-709, 1993 WL 90404, at *8 (D.N.J. Mar. 25, 1993) (no substantial assistance where defendant provided no "services beyond those traditionally associated with a broker-client relationship"); *Bane* v. *Sigmundr Exploration Corp.*, 848 F.2d 579, 581-82 (5th Cir. 1988) (no substantial assistance where defendant engaged only in routine banking activities and transactions); *Cromer Fin. Ltd.* v. *Berger*, 137 F. Supp. 2d 452, 470-72 (S.D.N.Y. 2001) (dismissing aiding and abetting claim under New York law because "clearing broker does not provide 'substantial assistance' to or 'participate' in a fraud when it merely clears trades").

Similarly, the comments to the Uniform Securities Act provision on aiding and abetting liability—which is substantially similar to the analogous provision of the TSA—specifically state that a clearing broker cannot be held liable for engaging in routine, ministerial clearing activities: "the performance by a clearing broker of the clearing broker's contractual functions—even though necessary to the processing of a transaction—without more would not constitute material aid or result in liability under this subsection." UNIF. SEC. ACT 2002 § 509, cmt. 11; *cf.* TEX. CIV. STAT. ANN. art. 581, § 33F(2).

In short, Pershing's alleged conduct—transferring funds, issuing confirmations and statements, and providing loans and margin financing to SGC clients (Compl. ¶¶ 22-25)—is insufficient to demonstrate substantial assistance in the sale of unregistered securities by SIBL and SGC. *See Fezzani* v. *Bear, Stearns & Co.*, 592 F. Supp. 2d 410, 426 (S.D.N.Y. 2008) (dismissing claims against clearing broker where "Complaint's allegations of substantial assistance do not go

beyond the ordinary services rendered by a clearing firm"). The Complaint does not allege that Pershing sold any CDs or solicited any CD purchases. Nor does it allege that Pershing developed, distributed or had any other involvement in the promotional materials related to the CDs.[6] Without any allegations of involvement by Pershing in the solicitation or promotion of the CDs, Plaintiffs' allegation that Pershing "willingly lent its name and reputation to enhance SIB[L]'s and SGC's appearance of legitimacy" (Compl. ¶ 27) is an insufficient basis to establish liability. *See Crescendo*, 61 S.W.3d at 473 (finding no secondary liability where primary violator used defendants' "reputation and celebrity status" because defendants' promotional materials and reputation were not based on either misrepresentations or deceitfulness and defendants did not assist in actual sale of fraudulent securities).

**B.     Plaintiffs Fail to Allege Facts Sufficient to Show That Pershing Had General Awareness of Its Supposed Role in the Primary Violation or Acted with Either Intent to Deceive or Reckless Disregard for the Law.**

Liability may be imposed under the TSA "'only if the aider has the requisite scienter.'" *Sterling Trust*, 168 S.W.3d at 842 (citing TEX. CIV. STAT. ANN. art. 581, § 33 cmt.— 1977 Amendment (Vernon Supp. 2004-2005)). In addition to alleging sufficiently the element of substantial assistance, to state a claim for aiding and abetting, Plaintiffs must allege that Pershing acted with "intent to deceive or defraud or with reckless disregard for the truth or the law."[7] TEX. CIV. STAT. ANN. art. 581, § 33F(2). "[T]he TSA's requirement of 'reckless disregard for the truth or the law' means that an alleged aider is subject to liability only if it rendered assistance to the seller in the face of a perceived risk that its assistance would facilitate untruthful or illegal activity by the primary violator." *Sterling Trust*, 168 S.W.3d at 837. In other words, "the alleged aider

---

[6]     Although Plaintiffs baldly assert that Pershing "induced purchasers to invest in CDs" (Compl. ¶ 22), this is the sort of "[t]hreadbare recital[] of [an] element[] of a cause of action, supported by [a] mere conclusory statement[]," that "do[es] not suffice." *Iqbal*, 129 S. Ct. at 1949.

[7]     Nowhere in the Complaint do Plaintiffs allege that Pershing acted with intent to defraud.

- 11 -

must possess a 'general awareness that his role was part of an overall activity that is improper.'" *Id.*
at 842 (citing *Gould* v. *Am.-Hawaiian S.S. Co.*, 535 F.2d 761, 780 (3d Cir. 1976)).

Courts have held that knowledge of the primary violator's wrongdoing "is a critical
element for plaintiffs seeking to impose aiding and abetting liability, 'for without this requirement
financial institutions, brokerage houses, and other such organizations would be virtual insurers . . .
against security law violations." *Guerrier*, 1993 WL 90404, at *8 (citing *Monsen* v. *Consol.*
*Dressed Beef Co.*, 579 F.2d 793, 799 (3d Cir. 1978)); *see also Ins. Co. of N. Am.* v. *Morris*, 981
S.W.2d 667, 675-76 (Tex. 1998) (finding no evidence that surety knew of issuer's primary
violation, and thus no secondary liability, even though surety was aware that president of issuer had
previously been enjoined from offering similar securities); *Frank*, 11 S.W.3d at 385 (refusing to
find liability where underwriters had no knowledge of primary violation and refusing to imply duty
to inform investors of investment risk).  Even knowledge of the primary violator's wrongdoing,
however, is insufficient where, as here, the plaintiff attempts to hold a defendant liable for its
normal business conduct. *See Woodward* v. *Metro Bank of Dallas*, 522 F.2d 84, 95 (5th Cir. 1975)
(discussing general awareness prong and stating "[i]f the alleged aider and abettor conducts what
appears to be a transaction in the ordinary course of his business, more evidence of his complicity is
essential");[8] *id.* at 97 ("In a case combining silence/inaction with affirmative assistance, the degree
of knowledge required should depend on how ordinary the assisting activity is in the business
involved.  If the evidence shows no more than transactions constituting the daily grist of the mill,
we would be loathe to find [aiding and abetting] liability without clear proof of intent to violate the
securities laws.").

---

[8]      As previously discussed, *see supra* note 5, Texas courts interpret the TSA in accordance with the federal
securities laws.

Here, the primary violation upon which Plaintiffs base their claim against Pershing is that SGC and SIBL allegedly sold unregistered securities in violation of the TSA. Plaintiffs therefore must allege facts sufficient to demonstrate that Pershing had a "general awareness" of its role in the unlawful sale of unregistered securities and that it acted in the face of a "perceived risk" that its clearing activities would facilitate this unlawful sale. *See Sterling Trust*, 168 S.W.3d at 842. Given that Plaintiffs have alleged only that Pershing aided SIBL and SGC by engaging in its ordinary clearing activities, Plaintiffs also must plead facts sufficient to show "clear proof of intent to violate the securities laws." *Woodward*, 522 F.2d at 97.

Plaintiffs have failed in both respects. Although Plaintiffs assert that Pershing "acted with conscious indifference and with reckless disregard to the fact that offering the CDs through SGC was an illegal, unregistered public offering" (Compl. ¶ 27), this statement is merely "'a formulaic recitation of the elements'" of an aiding and abetting claim. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Conclusory allegations such as this "will not suffice" to establish that Pershing had knowledge of the supposedly unlawful sales by SIBL and SGC, *In re Enron*, 540 F. Supp. 2d at 766, and they certainly do not offer "clear proof of intent" to violate the TSA, *Woodward*, 522 F.2d at 97. Similarly, Plaintiffs' naked assertion that Pershing "knew or should have known" that sales of the CD were "an illegal unregistered sale of securities" (Compl. ¶ 32) is unsupported by any allegations of fact and therefore need not be accepted as true. *See Iqbal*, 129 S. Ct. at 1949-51 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Twombly*, 550 U.S. at 557)). Moreover, Plaintiffs' allegation that Pershing "should have known" (*e.g.*, Compl. ¶¶ 19, 32) of the purported primary violation of SGC and SIBL is insufficient to plead scienter under the TSA. *See Sterling Trust*, 168

- 13 -

S.W.3d at 842-43. Texas courts have held that the Legislature intended for a higher standard than a "negligence or 'should have known' standard" to apply under these circumstances. *Id.*

Plaintiffs also allege that, "with the information available to it, Pershing either knew or should have known" that SIBL sold CDs "through SGC by publicly advertising their safety and security, consistent double digit returns, and by fabricating reasons why these CDs yielded a return that greatly exceeded that of commercial bank CDs." (Compl. ¶ 19.) But Plaintiffs do not assert what the "information available to [Pershing]" consisted of, how Pershing obtained such information, or when it was obtained. Mere allegations that Pershing was aware of solicitations by SIBL of "many thousands of investors" (*id.* ¶ 27) and of SGC's and SIBL's "aggressive sales" effort with respect to the CDs (*id.* ¶ 29) do not come close to alleging that Pershing was generally aware of its role or perceived the risk that it was assisting in SIBL's and SGC's allegedly unlawful sale of unregistered securities. Nor do such allegations plead the requisite "clear proof of intent to violate the securities laws." *Woodward*, 522 F.2d at 97.

Indeed, whether or not a securities offering meets registration requirements (in Texas or elsewhere) is a complex question that requires a detailed understanding of the facts and circumstances surrounding the offering and the securities at issue, as well as the requirements of Texas and federal law. Yet nowhere in the Complaint do Plaintiffs allege that Pershing knew how SIBL and SGC advertised the CDs in their offering materials, the actual sales methods utilized by SIBL and SGC and whether those sales were made to persons unaffiliated with SGC. These are the critical facts on which Plaintiffs base their claim that the CDs did not satisfy the private placement exemption in Texas (Compl. ¶ 18), but Plaintiffs make no allegation that Pershing was aware of these facts. Nor does the Complaint allege that Pershing participated in the development of or viewed any of the sales literature, offering materials, or purported public advertisements of the CDs,

or that Pershing had any awareness of these purported solicitation devices, let alone any "awareness that [its] role was part of an overall activity that is improper." *Sterling Trust*, 168 S.W.3d at 842 (citations omitted). Absent such allegations, the Complaint fails to plead facts sufficient to show that Pershing knew the unregistered sales of the CDs violated Texas law or that Pershing had a "clear intent" to support such violation.[9]

In addition to the deficiencies described above, Plaintiffs' attempt to premise their claim for relief for purchasing unregistered securities on allegations of securities fraud is similarly deficient. Plaintiffs assert "[t]he CDs were offered and sold by means of untrue statements of material fact, or an omission to state a material fact necessary to make the statements made not misleading," in violation of article 581-33A(2) (Compl. ¶ 40), and that Pershing "aid[ed] SGC . . . in the sale of securities by untruth or omission, with intent to deceive or defraud, or with reckless disregard for the truth or law." (*Id.* ¶ 38.) These conclusory statements, however, provide only "'a formulaic recitation of the elements'" that is insufficient to state a claim for aiding and abetting securities fraud. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs allege that SIBL sold CDs through SGC "by publicly advertising their safety and security, consistent double digit returns, and by fabricating reasons why these CDs yielded a return that greatly exceeded that of commercial bank CDs" but that, instead, "the CD proceeds were invested in speculative, illiquid, high-risk investments by a leveraged hedge fund." (Compl. ¶ 19.) As noted above, however,

---

[9]     Plaintiffs' allegations concerning Pershing's "internal concerns" and the "red flags" indicative of general misconduct do not make it plausible that Pershing knew that SIBL and SGC were illegally selling unregistered securities. For example, Plaintiffs point to the high interest rates offered on the CDs, as well as the broker commission rate of 1%. (Compl. ¶ 31.) Even if accepted as true, however, these allegations are consistent with the business explanation offered by SIBL—"a unique investment strategy" (*id.*)—and therefore do not satisfy *Iqbal*'s plausibility standard. *See Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)). With respect to the remaining "red flags," they at most may have prompted concerns about the overall financial health of SIBL and SGC—concerns that are entirely irrelevant to Plaintiffs' claims regarding failure to register securities.

Plaintiffs merely assert that "with the information available to it, Pershing either knew or should have known these facts," (*id.*), but they do *not* allege what information was supposedly available to Pershing, how Pershing purportedly obtained it, and when. Nor do they allege that Pershing did anything to assist in making these statements. Plaintiffs' reliance on such "'naked assertion[s]' devoid of 'further factual enhancement'" is fatal to their claim. *Iqbal*, 129 S. Ct. at 1949-51 (quoting *Twombly*, 550 U.S. at 557).

Given that Plaintiffs' allegations do not even meet the requirements of Rule 8 of the Federal Rules of Civil Procedure as set forth in *Iqbal* and *Twombly*, they certainly do not meet the heightened requirements of Rule 9(b), which applies to Plaintiffs' claim that Pershing aided and abetted securities fraud. Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See also Dorsey*, 540 F.3d at 338-39 ("Both federal securities claims and state-law fraud claims are subject to the pleading requirements of Rule 9(b)."); *In re Enron Corp. Secs., Derivative & "ERISA" Litigation*, 540 F. Supp. 2d 759, 765 (S.D. Tex. 2007); *Tuchman* v. *DSC Commc'ns Corp.*, 818 F. Supp. 971, 976-77 (N.D. Tex. 1993) ("The requirements of Rule 9(b) apply to securities fraud claims.") (citations omitted); *In re Blech Sec. Litig. ("Blech I")*, 928 F. Supp. 1279, 1295 (S.D.N.Y. 1996).

Indeed, "'[i]n cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.'" *In re Enron*, 540 F. Supp. 2d at 765 (citing *Carroll* v. *Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)). Plaintiffs fail entirely to meet these requirements, as the Complaint does not contain *any* allegations regarding, for example, the content of the allegedly fraudulent statements, the identity of the speaker, when and where the alleged statements were made or the

- 16 -

place in which the omissions should have appeared, and to whom the fraudulent statements were made. *See, e.g., id.* ("Rule 9(b) requires the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'") (citing *Southland Secs. Corp.* v. *INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).

Furthermore, even if Plaintiffs had adequately alleged securities fraud in the Complaint—which they did not—Pershing cannot be held liable for "failing to disclose information . . . to the plaintiffs" (Compl. ¶ 42) because Pershing's only role in the challenged transaction was to serve as SGC's clearing broker. It is well established that "[e]ven if [the clearing broker] knew but failed to disclose a material fact, no plaintiff can claim to have been defrauded by that omission, because, as a matter of law, a clearing broker owes no duty of disclosure to the clients of an introducing broker." *In re Blech Sec. Litig.*, 928 F. Supp. 1279, 1295 (S.D.N.Y. 1996) ("Silence, absent a duty to disclose, is not actionable . . . ."); *see also Connolly* v. *Havens*, 763 F. Supp. 6, 11 (S.D.N.Y. 1991) (granting motion to dismiss §10(b) claim and finding "absent a fiduciary duty between a clearing broker and the introducing broker's customers, the clearing broker's failure to disclose cannot constitute the requisite 'substantial assistance'"); *Stander* v. *Fin. Clearing Servs. Corp.*, 730 F. Supp. 1282, 1286-88 (S.D.N.Y. 1990) (finding that without a fiduciary duty of the clearing broker to the plaintiff, the clearing broker's inaction during the introducing broker's fraudulent activities "does not make out a claim for aiding and abetting"). Accordingly, to the extent that Plaintiffs are alleging a claim based on securities fraud, the claim should be dismissed. *See Tuchman*, 818 F. Supp. 976-77.

II.    **Under Well-Settled Precedent, Pershing Cannot Be Held Liable for the Acts of SGC or SIBL Simply Because It Acted as SGC's Clearing Broker.**

The Complaint is nothing more than an oft-used attempt to hold a clearing broker (Pershing) liable for the acts of an introducing broker (SGC) and its affiliate (SIBL). As described above, Plaintiffs assert that SGC and SIBL sold unregistered CDs in violation of Article 581 of the Texas Act. (Compl. ¶¶ 9, 18.) Plaintiffs then contend that Pershing's ministerial activities as a clearing broker, coupled with vague allegations of "red flags," permit them to recover against Pershing. (*Id.* ¶¶ 30-33.) This claim flies in the face of a well-settled body of case law.

The overwhelming weight of authorities under both state and federal law holds that "when a clearing firm acts merely as a clearing agent, it . . . cannot be held liable for the acts of an introducing firm." *McDaniel*, 196 F. Supp. 2d at 352 ("[C]ourts have refused to hold clearing firms liable for the practices of introducing brokers even where the clearing firm continued to provide[] clearing services after it knew or should have known of the introducing broker's fraudulent scheme."); *see also Fezzani*, 592 F. Supp. 2d at 425 ("The introducing broker is responsible for its own sales practices, and responsibility cannot be transferred to or imposed upon the clearing broker."); *Carlson* v. *Bear, Stearns & Co.*, 906 F.2d 315, 318-19 (7th Cir. 1990) ("clearing agents performing operational or ministerial duties have not been considered . . . subject to liability"); *Warren* v. *Tacher*, 114 F. Supp. 2d 600, 603 (W.D. Ky. 2000) ("Clearing firms are generally not responsible to customers for the actions of an introducing broker . . . , and courts have confirmed pre-hearing dismissals on these grounds.").

It is black letter law that "clearing firms have no fiduciary relationship with the customers of introducing brokers," *Strategic Income Fund, L.L.C.* v. *Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1296 n.12 (11th Cir. 2002), and likewise owe no duty of disclosure to introducing brokers' customers. *See, e.g., Greenberg*, 220 F.3d at 28-29 ("there is no well-settled law imposing

- 18 -

a duty upon a clearing broker" to inform introducing broker's customers of introducing broker's self-dealing); *In re Atl. Fin. Mgmt. Inc. Secs. Litig.*, 658 F. Supp. 380, 381 (D. Mass. 1986) ("A clearing broker normally has no disclosure duty, if the clearing function was the only role performed by the broker."); *SFM Holdings, Ltd.* v. *Banc of Am. Secs., L.L.C.*, 600 F.3d 1334, 1338-39 (11th Cir. 2010) ("[C]learing brokers ordinarily owe no fiduciary duty to the customers of introducing brokers."); *Riggs* v. *Schappell*, 939 F. Supp. 321, 329-30 (D.N.J. 1996) ("Numerous courts . . . have concluded that the clearing broker owes no duty to the client of the introducing broker.").

Clearing brokers cannot be held liable for the acts of their introducing brokers even where the clearing broker allegedly knew of the supposed wrongdoing but did not disclose such wrongdoing to the introducing broker's customer. *See, e.g., Levitt* v. *J.P. Morgan Secs., Inc.*, No. 99-CV-2789 (ADS)(MLO), 2010 WL 2559401, at *6 (E.D.N.Y. 2010) ("It is well-established that a clearing broker such as Bear Stearns generally owes no duty of disclosure to the clients of introducing brokers. This is true even where the clearing broker has actual knowledge of the introducing broker's fraudulent scheme.") (citing *In re Blech*, 928 F. Supp. at 1295-96); *McDaniel*, 196 F. Supp. 2d at 352; *Ross*, 639 F. Supp. at 327. Accordingly, Plaintiffs' allegations that Pershing "acted with conscious indifference and with reckless disregard to the fact that offering the CDs through SGC was an illegal, unregistered public offering" (Compl. ¶¶ 27, 28) are of no consequence. Pershing simply performed the traditional functions of a clearing broker for SGC (*id.* ¶¶ 31-34), which courts have consistently found cannot be the basis for liability in cases such as this. *See, e.g., McDaniel*, 196 F. Supp. 2d at 352; *Carlson*, 906 F.2d at 318-19; *Greenberg*, 220 F.3d at 28-29; *Fezzani*, 592 F. Supp. 2d at 425-26 ("[T]he specific acts alleged here—that Bear Stearns intervened with the NASD on Baron's behalf, extended credit and the like—cannot cast

Bear Stearns into liability because they are the type and kind of ordinary business activity of the clearing broker."); *SFM Holdings, Ltd.*, 600 F.3d at 1338-39.

## **CONCLUSION**

For the foregoing reasons, Pershing respectfully requests that this Court grant Pershing's motion to dismiss pursuant to Rule 12(b)(6) and dismiss the Complaint in its entirety with prejudice for failure to state a claim upon which relief can be granted.

Dated:  November 12, 2010

Respectfully submitted,

/s/ Rodney Acker
Rodney Acker
Texas State Bar No. 00830700

Ellen Sessions
Texas State Bar No. 00796282

Beau Cox
Texas State Bar No. 24065087

FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue
Suite 2800
Dallas, TX  75201-2784
Telephone:  (214) 855-7466
Facsimile:  (214) 855-8200

Richard C. Pepperman II
*(admitted pro hac vice)*

Jeffrey J. Chapman
*(admitted pro hac vice)*

Stephen Ehrenberg
*(admitted pro hac vice)*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile: (212) 291-9021

*Attorneys for Defendant Pershing LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ Rodney Acker
Rodney Acker