UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| CAROLYN KNEESE, ALBERT AND | : |
| CYNTHIA GORDON, MICHAEL AND | : |
| LINA EISEMANN, CAROLINA | : |
| SFEIR, DIEGO BUSTAMANTE, | : |
| | : |
| Plaintiffs, | : |
| v. | : |
| | : |
| PERSHING, L.L.C., | : |
| | : |
| Defendant. | : |

Civ. Action No. 3:10-cv-1908-P

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PERSHING LLC'S REPLY BRIEF IN
## SUPPORT OF ITS MOTION TO DISMISS

Rodney Acker
Ellen Sessions
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue
Suite 2800
Dallas, TX  75201-2784

Richard C. Pepperman II
(admitted pro hac vice)
Jeffrey J. Chapman
(admitted pro hac vice)
Stephen Ehrenberg
(admitted pro hac vice)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004

*Attorneys for Defendant Pershing
LLC*

January 14, 2011

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................................2

I.    PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO ESTABLISH
      SUBSTANTIAL ASSISTANCE. ......................................................................................2

II.   PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO ESTABLISH
      GENERAL AWARENESS OR RECKLESS DISREGARD OF THE
      PURPORTEDLY ILLEGAL SALES OF UNREGISTERED SECURITIES....................7

III.  PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO ESTABLISH
      FRAUD OR AIDING AND ABETTING FRAUD. ............................................................8

CONCLUSION...........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Akin* v. *Q-L Invests., Inc.*,
    959 F.2d 521 (5th Cir. 1992)............................................................................3

*Ashcroft* v. *Iqbal*,
    129 S. Ct. 1937 (2009) ...................................................................................6

*Bane* v. *Sigmundr Exploration Corp.*,
    848 F.2d 579 (5th Cir. 1988)............................................................................4

*Berwecky* v. *Bear, Stearns & Co.*,
    197 F.R.D. 65 (S.D.N.Y. 2000)........................................................................6

*Carroll* v. *Fort James Corp.*,
    470 F.3d 1171 (5th Cir. 2006)..........................................................................9

*Central Bank of Denver* v. *First Interstate Bank of Denver*,
    511 U.S. 164 (1994) .................................................................................1, 3

*Fezzani* v. *Bear, Stearns & Co.*,
    592 F. Supp. 2d 410 (S.D.N.Y. 2008) ...............................................................4

*Fowler* v. *LaSalle Bank, N.A.*,
    2009 WL 251940 (Cal. Ct. App. Feb. 4, 2009) ...................................................8

*Fox Int'l* v. *Fiserv Secs., Inc.*,
    490 F. Supp. 2d 590 (E.D. Pa. 2007) ................................................................5

*Frank* v. *Bear Stearns & Co.*,
    11 S.W.3d 380 (Tex. App. – Houston [14th] 2000, no pet.) ...................................3

*Guerrier* v. *Advest, Inc.*,
    1993 WL 90404 (D.N.J. Mar. 25, 1993) ............................................................7

*Hill* v. *Hunt*,
    2010 U.S. Dist. LEXIS 312 (N.D. Tex. Jan. 4, 2010).........................................10

*Hirata Corp.* v. *J.B. Oxford & Co.*,
    193 F.R.D. 589 (S.D. Ind. 2000). .....................................................................4

*In re Blech Sec. Litig.*,
    961 F. Supp. 569 (S.D.N.Y. 1997)....................................................................6

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
258 F. Supp. 2d 576 (S.D. Tex. 2003) ...................................................3

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,
540 F. Supp. 2d 759 (S.D. Tex. 2007) ...................................................9

*In re Odyssey Healthcare, Inc. Secs. Litig.*,
424 F. Supp. 2d 880 (N.D. Tex. 2005) (Godbey, J.)...................................9

*In re Westcap Enters.*,
230 F.3d 717 (5th Cir. 2000) ..............................................................1

*Klein* v. *Oppenheimer & Co.*,
130 P.3d 569 (Kan. 2006) ..................................................................6

*Krames* v. *Bohannon Holman, LLC*,
2009 U.S. Dist. LEXIS 24818 (N.D. Tex. Mar. 24, 2009) .......................10

*Litson-Gruenberg* v. *JPMorgan Chase & Co.*,
2009 U.S. Dist. LEXIS 117749 (N.D. Tex. Dec. 16, 2009)........................8

*McDaniel* v. *Bear Stearns & Co.*,
196 F. Supp. 2d 343 (S.D.N.Y. 2002) ....................................................6

*Navarro* v. *Grant Thornton, LLP*,
316 S.W.3d 715 (Tex. App. – Houston [14th Dist.] 2010, no pet.) .............7

*Southland Secs. Corp.* v. *INSpire Ins. Solutions, Inc.*,
365 F. 3d 353 (5th Cir. 2004)...........................................................9, 10

*Stander* v. *Fin. Clearing & Servs. Corp.*,
730 F. Supp. 1282 (S.D.N.Y. 1990) .......................................................4

*Sterling Trust Co.* v. *Adderley*,
168 S.W.3d 835 (Tex. 2005)...............................................................5, 7

*Timberlake* v. *Synthes Spine Co.*,
2009 U.S. Dist. LEXIS 29074 (S.D. Tex. Mar. 31, 2009) .......................10

## STATUTES

15 U.S.C. § 78t(e)..............................................................................3

TEX. CIV. STAT. ANN. art. 581, § 33(f)(2) ...............................................5

## OTHER AUTHORITIES

*Del Mar Fin. Servs., Inc.*, Init. Dec. Release No. 188, 2001 WL 919968, *29 ...................3

FED. R. CIV. P. 9(b)............................................................................................................2, 9, 10

FED. R. CIV. P. 8(a)(2) ...............................................................................................................2, 9

Rule 10b-5 ........................................................................................................................................3

UNIF. SEC. ACT 2002 § 509 ...........................................................................................................5

Plaintiffs assert a claim against Pershing under the Texas Securities Act ("TSA") for aiding and abetting the sale of unregistered securities by SIBL and SGC. This claim fails for two independent reasons.

*First*, in alleging that Pershing substantially assisted in the sale of unregistered securities—an essential element of an aiding and abetting claim—Plaintiffs do not cite any law requiring a clearing broker to monitor an introducing broker dealer's compliance with registration requirements. Rather, Plaintiffs rely entirely on Pershing's routine and ministerial clearing activities. The law is clear, however, that such allegations are insufficient to state an aiding and abetting claim against a clearing broker such as Pershing. Plaintiffs argue that the many federal authorities rejecting such claims are inapplicable here because the TSA allows aiding and abetting claims while the federal securities laws do not. (Pls.' Opp. at 8-9.) This analysis is flawed. Federal law always has permitted the SEC to pursue aiding and abetting claims, and courts allowed private plaintiffs to do so before the Supreme Court's decision in *Central Bank of Denver* v. *First Interstate Bank of Denver*, 511 U.S. 164 (1994). Indeed, Texas courts derived the elements for aiding and abetting liability under the TSA from federal law, and Texas courts interpret the TSA in accordance with the federal securities laws because they are "so similar." *See In re Westcap Enters.*, 230 F.3d 717, 726 (5th Cir. 2000). Accordingly, the numerous federal cases holding that clearing brokers cannot be liable for aiding and abetting warrant dismissal of Plaintiffs' claim. Plaintiffs' single, conclusory allegation that Pershing "acted beyond the scope" of its clearing broker functions (Compl. ¶ 35)—with no factual allegations to support it—is insufficient to state a claim.

*Second*, Plaintiffs allege no facts demonstrating that Pershing knew that SIBL and SGC were selling unregistered securities in violation of Texas law. This failure to allege that

Pershing had knowledge of the alleged primary violation of the TSA by SIBL and SGC is also

fatal to Plaintiffs' claim.   At most, the complaint alleges that Pershing had vague and

unspecified information about SIBL that Plaintiffs believe should have caused general concern.

Such allegations are insufficient to establish that Pershing knew the facts necessary to conclude

that the SIBL CDs needed to be registered under Texas law but were not and that SGC and SIBL

were violating the TSA by selling the unregistered CDs.

Faced with Pershing's motion to dismiss, Plaintiffs now contend that they have

pled legally sufficient "claims of fraud" in their complaint.  (Pls.' Br. at 10.)  But the complaint

in this case does not include a count for aiding and abetting securities fraud.  As a result,

Plaintiffs have not pled such a claim in compliance with Rule 8(a)(2)'s requirement of "a short

and plain statement of the claim showing that the pleader is entitled to relief," let alone

Rule 9(b)'s requirement that Plaintiffs "state with particularity the circumstances constituting

fraud."  The Court should reject Plaintiffs' attempt to use their opposition to Pershing's motion

to assert a fraud claim not found in their complaint.

## ARGUMENT

### I.    Plaintiffs Fail to Allege Facts Sufficient to Establish Substantial Assistance.

In alleging that Pershing provided "substantial assistance" to SIBL and SGC in

their sale of unregistered securities in violation of the TSA, Plaintiffs fail entirely to provide any

legal authority that requires a clearing broker to ensure that an introducing broker dealer

complies with its own registration obligations.  Rather, Plaintiffs rely solely on Pershing's

routine and ministerial activities as a clearing broker, such as processing orders, sending wires

and providing margin credit.  (Pls.' Opp. at 6-7.)  As such, Plaintiffs' claim under Texas law is

contrary to a well-established body of federal case law holding that clearing brokers cannot be

held liable for aiding and abetting based on such activities.  (*See* Def.'s Br. at 9-10, 18-20.)

Plaintiffs argue that these cases are inapplicable because, unlike the TSA, the federal securities laws do not provide for aiding and abetting liability and "[t]he TSA has different requirements than federal securities laws."  (Pls.' Opp. at 8-9.)  Plaintiffs are mistaken. The federal securities laws allow the SEC to assert claims for aiding and abetting, *see* 15 U.S.C. § 78t(e), and many courts permitted private actions for aiding and abetting liability prior to *Central Bank of Denver* v. *First Interstate Bank of Denver*, 511 U.S. 164 (1994).  Given the similarities between the federal laws and the TSA, Texas courts interpret the TSA in accordance with the federal securities laws and relevant federal authorities.[1]  (Def.'s Br. at 9 n.5.)  Indeed, the elements required to establish aiding and abetting liability under the TSA, including "substantial assistance," are nearly identical to, and were derived from, federal case law involving aiding and abetting claims under the federal securities laws.  *See Frank* v. *Bear Stearns & Co.*, 11 S.W.3d 380, 384 (Tex. App. – Houston [14th] 2000, no pet.).  Thus, while the Supreme Court's decision in *Central Bank* eliminated private actions for aiding and abetting liability under Rule 10b-5, that does not change the fact that Texas courts fashioned the elements of aiding and abetting liability directly from federal court decisions that pre-dated *Central Bank*.

Federal case law involving aiding and abetting claims brought by the SEC and pre-*Central Bank* private actions makes clear that the provision of routine clearing services on which Plaintiffs base their claim under the TSA does not constitute "substantial assistance."  *See, e.g.*, *Del Mar Fin. Servs., Inc.*, Init. Dec. Release No. 188, 2001 WL 919968, at *29 (Initial Decision, Aug. 14, 2001) (collecting cases and noting that "[t]here are essentially no cases in

---

[1]      A number of the cases that Plaintiffs cite recognize that Texas courts rely on federal case law in interpreting the TSA.  *See, e.g.*, *Akin* v. *Q-L Invests., Inc.*, 959 F.2d 521, 532 (5th Cir. 1992) ("We take some comfort from the fact that Texas courts generally look to decisions of the federal courts to interpret the Texas Securities Act because of obvious similarities between the state and federal laws. . . .  We think that they are sufficiently parallel in relevant ways that, on our facts, the state securities claims stand or fall with the federal claims.").  Plaintiffs rely on *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 608 (S.D. Tex. 2003), but that case merely acknowledges that (i) aiding and abetting liability under the federal securities laws was an implied cause of action and (ii) *Central Bank* eliminated this implied cause of action.

which clearing brokers have been held . . . secondarily liable" for aiding and abetting

wrongdoing of introducing brokers "even when they knew of it"); *Stander* v. *Fin. Clearing &*

*Servs. Corp.*, 730 F. Supp. 1282, 1286 (S.D.N.Y. 1990) (same, in private action); *see also*, *e.g.*,

*Bane* v. *Sigmundr Exploration Corp.*, 848 F.2d 579, 581-82 (5th Cir. 1988) (no substantial

assistance where defendant engaged only in routine banking activities and transactions); *Fezzani*

v. *Bear, Stearns & Co.*, 592 F. Supp. 2d 410, 426 (S.D.N.Y. 2008) (dismissing claims against

clearing broker where "Complaint's allegations of substantial assistance do not go beyond the

ordinary services rendered by a clearing firm").  Plaintiffs cite no case that suggests that clearing

brokers should be treated differently under Texas law.

   Plaintiffs likewise have failed to rebut Pershing's argument that the ministerial

clearing activities that Pershing allegedly undertook here do not constitute "substantial

assistance" sufficient to establish aiding and abetting liability under other states' Blue Sky laws.

Plaintiffs rely on *Hirata Corp.* v. *J.B. Oxford & Co.*, 193 F.R.D. 589 (S.D. Ind. 2000).  (Pls.'

Opp. at 4, 7.)  But the court in that case recognized that courts, in interpreting similar "materially

aids" provisions of other state Blue Sky laws, "have not applied liability for 'materially aiding'

to one who merely performed 'ministerial functions.'"  193 F.R.D. at 600.  As Pershing

explained in its opening brief (Def.'s Br. at 8-11), Pershing did not even custody the SIBL-issued

CDs or reflect them on any account statements that it sent to its introducing brokers' customers.

Accordingly, Pershing's alleged role in the sales of SIBL CDs was even more limited than that

of a typical clearing broker.[2]

   Further, Plaintiffs do not dispute that the Uniform Securities Act ("USA")

provides that a clearing broker cannot be liable for "material aid" by performing its "contractual

---

[2]   The Ward affidavit on which Plaintiffs rely in opposing Pershing's motion confirms that the "CDs are not
custodied at Pershing, nor are they reflected on any Pershing brokerage account statements." (Ward Aff. ¶ 4.)  The
affidavit thus disproves Plaintiffs' baseless allegation that Pershing cleared all of the SIBL CDs at issue.

functions—even though necessary to the processing of a transaction." UNIF. SEC. ACT 2002

§ 509, cmt. 11.  Although Plaintiffs argue that "the TSA is not identical" to the Uniform

Securities Act (Pls.' Opp. at 4 n.3), the relevant provisions of the two are substantially similar.

*Compare* UNIF. SEC. ACT 2002 § 509(g) (providing secondary liability for certain actors who

"materially aid[ ] the [primary] conduct giving rise to the liability") *with* TEX. CIV. STAT. ANN.

art. 581, § 33(f)(2) (providing secondary liability for certain actors who "materially aid[ ] a

seller, buyer, or issuer of a security" in violation of TSA).  To the extent that the provisions are

meaningfully different, the standard for imposing aiding and abetting liability under the USA is

*less* strict than it is under the TSA.  *See Sterling Trust Co.* v. *Adderley*, 168 S.W.3d 835, 844

(Tex. 2005) (noting that TSA aiding and abetting provision is subject to "a stricter scienter

restriction" than precursor to USA § 509).  As a result, the proposition that a clearing broker's

routine contractual functions are insufficient to state a claim under the USA for aiding and

abetting liability applies with even greater force to Plaintiffs' allegations under the TSA.

Plaintiffs attempt to sidestep the overwhelming weight of authority on this issue

by citing a small number of cases that allowed actions against clearing brokers to go forward

based on specific allegations—not present here—that the clearing broker went well beyond its

clearing functions and actively participated in the illegal transactions at issue.  (Pls.' Opp. at 4-

6.)  The allegations in those cases are very different from those in this case.  *See*, *e.g.*, *Fox Int'l*

v. *Fiserv Secs., Inc.*, 490 F. Supp. 2d 590, 609 & n.12 (E.D. Pa. 2007) (denying clearing firm's

motion to dismiss where complaint alleged that clearing broker went well beyond routine

clearing functions by "influencing and controlling" decision-making of introducing broker).

Plaintiffs argue that they "have alleged that Pershing went well beyond ministerial

clearing functions."  (Pls.' Opp. at 15.)  The complaint's single, conclusory assertion that

"Pershing acted beyond the scope of its ministerial and ordinary administrative functions as a

clearing firm" (Compl. ¶ 35) is unsupported by any allegations of fact and thus insufficient to state a claim.  *See Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In the limited circumstances in which courts have upheld an aiding and abetting claim against a clearing broker, the complaints alleged that the clearing broker *directly participated* in the alleged wrongdoing by executing trades themselves or by propping up the introducing broker through sham transactions in furtherance of an improper scheme.  *See*, *e.g.*, *In re Blech Sec. Litig.* ("*Blech II*"), 961 F. Supp. 569, 584-85 (S.D.N.Y. 1997) (holding that Bear Stearns' conduct exceeded scope of routine clearing functions where Bear Stearns "directed" and "instigated" certain trades by introducing broker); *Berwecky* v. *Bear, Stearns & Co.*, 197 F.R.D. 65, 67 (S.D.N.Y. 2000) (complaint alleged that Bear Stearns placed employees at introducing broker's offices to direct trading decisions); *McDaniel* v. *Bear Stearns & Co.*, 196 F. Supp. 2d 343, 356 (S.D.N.Y. 2002) (clearing broker exceeded routine clearing functions by placing Bear Stearns employees on introducing broker's premises and directing trades).  The complaint in this case alleges nothing of the sort.[3]

      Similarly, Plaintiffs' citation of cases in which the applicable state law is significantly different does not support their claims.  *See*, *e.g.*, *Klein* v. *Oppenheimer & Co.*, 130 P.3d 569, 588 (Kan. 2006) (considering Kansas Blue Sky law provision that "differs significantly" from any provision of federal securities law).  Nor should the Court give any weight to Plaintiffs' improper reliance on arbitration awards and negotiated settlements with the SEC.  (*See* Pls.' Opp. at 9, 15.)  Such citations are insufficient to overcome the abundance of decided cases setting forth when clearing brokers can be held liable for aiding and abetting.

---

[3]     Plaintiffs' argument that "Pershing had a duty to inform federal regulators of [Stanford's suspicious] activities, and its failure to do so makes Pershing complicit in Stanford's Ponzi scheme" (Pls.' Opp. at 15), says nothing about SIBL's failure to register securities, which is the only basis for Plaintiffs' claims.

Plaintiffs also completely fail to address Pershing's argument that all of Pershing's routine clearing activities occurred *after* Plaintiffs had made their decisions to purchase the SIBL CDs and, as such, cannot constitute "substantial assistance" in the alleged sale of the unregistered securities. (*See* Def.'s Br. at 9-10.) It defies logic to hold Pershing liable for aiding and abetting the *sale* of unregistered securities when Pershing performed its functions as clearing broker after Plaintiffs already had decided to purchase SIBL CDs.

## II.   Plaintiffs Fail to Allege Facts Sufficient to Establish General Awareness or Reckless Disregard of the Purportedly Illegal Sales of Unregistered Securities.

Plaintiffs' suggestion that they need not allege that Pershing had any knowledge of the alleged primary violation of the TSA by SIBL and SGC (Pls.' Opp. at 12) is simply wrong. Knowledge of the primary violator's wrongdoing "is a critical element for plaintiffs seeking to impose aiding and abetting liability, 'for without this requirement financial institutions, brokerage houses, and other such organizations would be virtual insurers . . . against security law violations.'" *Guerrier* v. *Advest, Inc.*, 1993 WL 90404, at *8 (D.N.J. Mar. 25, 1993); *Sterling Trust*, 168 S.W.3d at 841 n.3. This is so regardless of whether the alleged primary violation is securities fraud or sale of unregistered securities. *See*, *e.g.*, *Navarro* v. *Grant Thornton, LLP*, 316 S.W.3d 715, 720 (Tex. App. – Houston [14th Dist.] 2010, no pet.).

In their attempt to plead knowledge of the alleged registration violation, Plaintiffs recite what they claim to be "numerous specific allegations of Pershing's general awareness of improper activity and a reckless disregard for the truth and the law." (Pls.' Opp. at 13.) But none of these allegations say anything about Pershing's supposed knowledge of SIBL's or SGC's improper sale of unregistered securities. Instead, Plaintiffs rely on allegations that Pershing transferred funds for SGC customers to an Antiguan bank (Compl. ¶ 23); that Pershing knew of the high returns and broker commission rates offered on the SIBL CDs (*id.* ¶¶ 19, 29);

- 7 -

that Pershing "ignored" purportedly large solicitations and purchases of the CDs (*id.* ¶ 27); and

that "[n]umerous red flags . . . existed" regarding the CDs (*id.* ¶ 31).  (*See* Pls.' Opp. at 13-14.)

These allegations fail entirely to address the basis for Plaintiffs' aiding and abetting claim under

the TSA—Pershing's supposed knowledge that SIBL and SGC were improperly selling CDs

without registering them under Texas law.  (*See* Def.'s Br. at 13-15.)[4]

Indeed, Plaintiffs fail to allege that Pershing was aware of any of the facts on

which they base their claim that the CDs were required to be registered.  The complaint says

nothing about Pershing's knowledge of the actual sales methods used by SIBL and SGC,

whether sales were made to persons unaffiliated with SGC, or the purported solicitation devices

used by SGC and SIBL.  Plaintiffs' general allegations of Pershing's knowledge of transfers to

Antigua and the rates of return on CDs do not make it more plausible than not that Pershing

knew that SIBL and SGC were improperly selling securities that were required to be registered

under Texas law.  *See Litson-Gruenberg* v. *JPMorgan Chase & Co.*, 2009 U.S. Dist. LEXIS

117749 (N.D. Tex. Dec. 16, 2009) (dismissing aiding and abetting claim for failure to allege

knowledge because complaint relied on vague and unspecific allegations); *Fowler* v. *LaSalle*

*Bank, N.A.*, 2009 WL 251940, at \*7 (Cal. Ct. App. Feb. 4, 2009) (dismissing aiding and abetting

claims where plaintiff pleaded only that defendant had general suspicion and doubt about legality

of unregistered securities sold).

### III.   Plaintiffs Fail to Allege Facts Sufficient to Establish Fraud or Aiding and Abetting Fraud.

Although Plaintiffs' complaint alleges only one count of aiding and abetting the

---

[4]      Plaintiffs incorrectly state that "Pershing does not dispute the primary violation regarding sale of unregistered securities."  (Pls.' Opp. at 10.)  On the contrary, Pershing has not taken a position in this action as to whether the SIBL-issued CDs were required to be registered under Texas law but were not, nor does it need to do so for purposes of its motion to dismiss.  Plaintiffs' failure to allege that Pershing knew that the CDs were required to be registered but were not is fatal to plaintiffs' aiding and abetting claim.

"sale of unregistered securities" (Compl. ¶ 38), Plaintiffs apparently contend that they have pled

legally sufficient "claims of fraud" in their complaint as well.  (Pls.' Opp. at 10.)  Plaintiffs have

failed to include as a count in their complaint aiding and abetting securities fraud, which alone is

fatal to any such claim under Rule 8(a)(2).[5]  Moreover, Plaintiffs do not come close to meeting

Rule 9(b)'s requirement that Plaintiffs "state with particularity the circumstances constituting

fraud."  FED. R. CIV. P. 9(b).  Plaintiffs fail entirely to "specify the statements contended to be

fraudulent, identify the speaker, state when and where the statements were made, and explain

why the statements were fraudulent." *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,

540 F. Supp. 2d at 765 (citing *Southland Secs. Corp.* v. *INSpire Ins. Solutions, Inc.*, 365 F. 3d

353, 362 (5th Cir. 2004)); *see also Carroll* v. *Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir.

2006); *In re Odyssey Healthcare, Inc. Secs. Litig.*, 424 F. Supp. 2d 880, 894 (N.D. Tex. 2005)

(Godbey, J.) ("the Complaint must establish with particularity the 'reasons why the statement is

misleading'").  This is fatal to Plaintiffs' purported fraud claim.

       Plaintiffs contend that they "alleged numerous facts showing that Stanford sold

the CDs to the plaintiffs by means of untrue statements or omissions" (Pls.' Opp. at 10), but the

examples Plaintiffs cite, among other deficiencies, do not mention *any* particular fraudulent

statements or omissions made by SGC or SIBL, when and where they were made, who made

them or what role Pershing played in making those statements.  Indeed, the cited allegations

simply involve unspecified securities offerings or conclusory assertions about Pershing unrelated

to any purported fraud.  (*Id.* at 10-11.)  Nor does Plaintiffs' unsupported and conclusory

statement that that "Pershing was aware . . . that Stanford's misstatements concerning their

---

[5]     Rule 8(a)(2) requires that, for each claim they assert, Plaintiffs' complaint sets forth "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Plaintiffs have clearly not satisfied this requirement with respect to a claim for aiding and abetting securities fraud, which is mentioned nowhere in their complaint.

exemption were false" (Pls.' Opp. at 12) cure Plaintiffs' failure to meet the particularity requirements of Rule 9(b). *See Hill* v. *Hunt*, 2010 U.S. Dist. LEXIS 312, at *14-15 (N.D. Tex. Jan. 4, 2010) (refusing to consider facts not alleged and first raised in opposition to motion to dismiss and holding that "Plaintiff fails to identify facts plead in his original petition which meet the particularity requirement of Rule 9(b) in his efforts to plead the fraud necessary to support his claim[] . . . for . . aiding and abetting fraud"); *Timberlake* v. *Synthes Spine Co.,*, 2009 U.S. Dist. LEXIS 29074, at *11 (S.D. Tex. Mar. 31, 2009) (granting motion to dismiss where "Plaintiffs clearly fail to indicate the place in which the omission should have appeared and allege no facts showing when, if ever, it was incumbent upon [Defendants] . . . to disclose any information to them at all, nor how [Defendants] should have done so") (citations omitted); *Krames* v. *Bohannon Holman, LLC*, 2009 U.S. Dist. LEXIS 24818, at *30 (N.D. Tex. Mar. 24, 2009) (dismissing fraud claim where "[t]he Court cannot tell from the pleadings when any particular statement was made or why the statement was fraudulent").

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' complaint in its entirety with prejudice and deny Plaintiffs' request for leave to amend their pleadings. Plaintiffs provide no additional allegations that they contend would "cure any defect" in their complaint. *See Southland*, 365 F. 3d at 384 (upholding denial of leave to amend where "Plaintiffs never at any time . . . advised the district court of how or in what manner they would amend the Complaint or what allegations would be added or deleted if allowed to do so," and never "suggested they have relevant information they were unaware of when the Complaint was filed"). Moreover, the key factual allegations needed to state a claim under the TSA concern Pershing's role (or lack thereof) in the sale of the SIBL CDs to Plaintiffs themselves. If such facts existed, Plaintiffs would have known of them when they filed their complaint.

Dated:  January 14, 2011

Respectfully submitted,


/s/ Rodney Acker
Rodney Acker
Texas State Bar No. 00830700

Ellen Sessions
Texas State Bar No. 00796282

Beau Cox

Texas State Bar No. 24065087

FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue
Suite 2800
Dallas, TX  75201-2784
Telephone:  (214) 855-7466
Facsimile:  (214) 855-8200

Richard C. Pepperman II
*(admitted pro hac vice)*

Jeffrey J. Chapman
*(admitted pro hac vice)*

Stephen Ehrenberg
*(admitted pro hac vice)*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile: (212) 291-9021

*Attorneys for Defendant Pershing LLC*

- 11 -

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on January 14, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and mailed Plaintiffs' counsel copies by certified mail, return receipt requested and email since they are not yet registered on ECF.


<u>/s/ Rodney Acker  </u>
Rodney Acker