IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAROLYN KNEESE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1908-N |
| | § | |
| PERSHING, L.L.C., | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses Defendant Pershing L.L.C.'s motion to dismiss [6].  Because

Plaintiffs[1] sufficiently state their aiding and abetting claims, the Court denies the motion.

### I. PLAINTIFFS' SECURITIES DISPUTE

This action relates to the Securities and Exchange Commission's (the "SEC") ongoing

securities fraud action against R. Allen Stanford, his associates, and various entities under

Stanford's control (the "Stanford Defendants").  The Stanford Defendants allegedly swindled

billions of dollars from investors through an elaborate and international Ponzi scheme.  As

part of that litigation, this Court "assume[d] exclusive jurisdiction and t[ook] possession of

the" "Receivership Assets" and "Receivership Records" (collectively, the "Receivership

Estate").  *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the

"Receivership Order"), *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-

N (N.D. Tex. filed Feb. 17, 2009).

---

[1]The plaintiffs in this action are Carolyn Kneese, Albert and Cynthia Gordon, Michael
and Linda Eisemann, Carolina Sfeir, and Diego Bustamante.

Plaintiffs here purchased certificates of deposit ("CDs") issued by Stanford International Bank Ltd. ("SIB") through SIB's affiliated U.S. broker-dealers, the Stanford Group Company ("SGC") and Stanford Capital Managements ("SCM"). Defendant Pershing LLC ("Pershing") acted as a clearing broker for SGC from December 2005 until December 2008. Plaintiffs allege that Pershing aided and abetted Stanford in selling unregistered securities in violation of the Texas Securities Act ("TSA"). TEX. REV. CIT. STAT. art. 581-1, *et seq.* Pershing now moves to dismiss, alleging that the Plaintiffs' complaint fails to state a claim, *see* FED. R. CIV. P. 12(b)(6), and fails to state fraud claims with particularity. *See* FED. R. CIV P. 9(b).

## II. STANDARDS OF REVIEW

### A. *Rule 12(b)(6) Standard*

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the claim or element. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The Supreme Court has observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [*Iqbal v. Hasty*,] 490 F.3d 143, 157-158 [(2d Cir. 2007)]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).
>
> In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion, the Court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### B.  Rule 9(b) Standard

For claims based on fraud, a complaint must allege the fraudulent circumstances with particularity. FED. R. CIV. P. 9(b). In the Fifth Circuit, Rule 9(b) requires a plaintiff to plead

the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)) (alteration in original).

### III. PLAINTIFFS STATE A VIABLE CLAIM

Article 581-33F(2) of the Texas Securities Act provides that "a person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under [various provisions of the TSA] jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer." Thus, to prove a violation, Plaintiffs must show that: (1) a primary violation of the securities laws occurred; (2) the aider and abettor intended to deceive the plaintiff, or, at least was "subjectively aware of the primary violator's improper activity"[2]; and (3) the aider and abettor rendered "substantial assistance" or "material aid" in the primary violation.[3]   Although federal securities law does not have a corresponding

---

[2]In *Sterling Trust Co. v. Adderley*, the Texas Supreme Court held that the statute's "reckless disregard for the truth" language contemplated subjective awareness of the improper activity. 168 S.W. 3d 835, 837 (Tex. 2005).

[3]Texas cases state that Texas law requires that a person "substantially assist" a primary violation. *Frank v. Bear, Sterns & Co.*, 11 S.W.3d 380, 374 (Tex. App. – Houston [14th Dist.] 2000, pet. denied). Yet the Texas statute requires that an aider and abettor "materially aid" a primary violation, not substantially assist. TEX. CIV. STAT. art. 581-33F(2). The Texas Supreme Court has never applied the "materially aid" requirement of the statute, so the Court does not know if this semantic distinction makes any meaningful difference. But the Court notes that state courts have relied upon similar distinctions to distinguish federal aiding and abetting case law. *See Klein v. Oppenheimer & Co., Inc.*, 130 P.3d 569, 588 (Kan. 2006). Nevertheless, the Court will consider federal caselaw because Texas state courts do.

aiding and abetting statute,[4] Texas courts have looked to federal case law in other contexts. *Star Supply Co. v. Jones*, 665 S.W.2d 194 (Tex. App. – San Antonio 1984, no writ) (citing *Searsy v. Comm. Trading Corp.*, 560 S.W.2d 637 (Tex. 1997)). And in the aiding and abetting context, it appears that Texas courts derived their test from the test applied in federal aiding and abetting claims.[5] Accordingly, the Court will look to federal law for guidance. But because many states have enacted substantially similar aiding and abetting statutes, the Court will look to caselaw from those states as well. *See, e.g.*, *Klein v. Oppenheimer & Co., Inc.*, 130 P.3d 569, 588-89 (Kan. 2006).

### A. *Plaintiffs Have Sufficiently Pled Two Primary Violations*

To prove an article 33-F(2) claim, a plaintiff must prove a primary violation of the TSA. Plaintiffs allege two separate violations: (1) that Stanford sold unregistered securities in violation of article 581-33(A)(1); and (2) that Stanford sold his CDs by means of an untruth or omission in violation of article 581-33(A)(2). The Court finds that Plaintiffs have

---

[4]*See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 576, 608 (S.D. Tex. 2003). Historically, federal courts permitted buyers of securities to bring claims against aiders and abettors of securities fraud under federal law. But by its decision in *Central Bank of Denver v. First Interstate Bank of Denver*, the Supreme Court ended this type of claim. 511 U.S. 164. Pershing is correct that the SEC may still bring aiding and abetting claims, but the Court notes that the elements of such claims may have changed. *See SEC v. Apuzzo*, 689 F.3d 204, 206 (holding that proof of substantial assistance is different in SEC actions).

[5]In *Frank v. Bear, Sterns & Co.*, the court of appeals stated for the first time that the elements of a Texas aiding and abetting claim under article 33-F(2) required substantial assistance of the violation. 11 S.W.3d 380, 374 (Tex. App. – Houston [14th Dist.] 2000, pet. denied). In doing so, the court relied on a law review article that, at least in so far as it listed "substantial assistance" as a requirement under the Texas statute, relied upon a Fifth Circuit case applying the federal law. *See* Keith A. Rowley, *The Sky is Still Blue in Texas: State Law Alternatives to Federal Securities Remedies*, 50 BAYLOR L. REV. 99, 182 (1998) (citing *Abbott v. Equity Group Inc.*, 2 F.3d 613, 621 (5th Cir. 1993)).

sufficiently pled both primary violations.

  ***1. Plaintiffs Have Pled a Primary Violation for Selling Unregistered Securities.*** – In Texas, prior to issuing a security, a person must register or otherwise acquire a permit to sell from the Commissioner.  TEX. CIV. STAT. art. 581-7.  However, there are exceptions to this rule.  Plaintiffs allege that SIB security offerings were not registered — a claim that Pershing does not dispute — and that SIB claimed its securities were exempt from registration under the private offering exemption.  Under Texas law, that exemption is available only if the issuer of a security sells the security to thirty-five or fewer investors and does so without public solicitation.  *Id.* art. 581-5.  Plaintiffs allege that the Stanford securities were not registered and further allege that SGC sold the CDs though general solicitation  through print media, television advertisements, and seminars to thousands of offerees.  Assuming the truth of these allegations, the private offering exemption obviously would not apply.  Accordingly, the Court finds that Plaintiffs have sufficiently pled a primary violation that Stanford sold unregistered securities in violation of the Texas Securities Act.

  ***2. Plaintiffs Have Pled a Primary Violation Based on Untrue Statement.*** – It is also a violation of the TSA to "offer[] or sell[] a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to the make the statements made, in light of the circumstances under which they are made, not misleading."  TEX. CIV. STAT. ART. 581-33A(2).  Because this is a statute based on fraud, Plaintiffs must also meet the particularity standard of Rule 9(b).  *See Rombach v. Chang*, 355 F.3d 164, (2d Cir. 2004) (stating that Rule 9(b)'s particularity requirement applies to securities claims brought under 15 U.S.C. § 77l);  *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*,

97 S.W.3d 779, 783 (Tex. App.— Dallas 2003), *rev'd on other grounds*, 161 S.W.3d 482 (Tex. 2005).

Plaintiffs have done this.  They allege that Stanford and his affiliates misrepresented that the CD offering was exempt from registration.  Further, they allege that Stanford made this representation "on a continuous basis from at least 2005 to 2008," and made the representation in SIB and SGC's "offering materials."  These materials included "general public advertisements, publicly distributed magazine articles and other communications" as well as seminars and meetings.  Finally, Plaintiffs allege what Stanford and his affiliates obtained: CD sales of approximately $7.2 billion.  These facts sufficiently allege the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."  *Williams*,112 F.3d at 177. Accordingly, the Court finds that the complaint meets the requirements of Rule 9(b).

### B.  Plaintiffs Have Sufficiently Pled Pershing's "Subjective Awareness"

The TSA requires that the aider and abettor possess a "general awareness that his role was part of an overall activity that is improper."  *Adderley*, 168 S.W.3d at 840.  The Court finds that Plaintiffs have sufficiently alleged this general awareness.  The Complaint alleges that Pershing knew SIB sold $7.2 billion in CDs by advertising safe, secure, double-digit returns.  The CDs, in fact, were not like those issued by U.S. banks; the CD proceeds were actually invested (to the extent not simply taken by Stanford) in speculative, illiquid, high-risk investments by a leveraged hedge fund.  The Complaint further alleges that Pershing knew that SIB fabricated explanations for why these CDs yielded returns higher than those

of U.S. commercial bank CDs, and that Pershing expressed internal concerns about SIB's financial status.  The Complaint also alleges that Pershing was aware that SIB was paying SGC and its brokers excessive compensation for the sale of the CDs.  Yet still, according to Plaintiffs, Pershing continued to assist in the sales.  The Court finds that the complaint sufficiently alleges Pershing's subjective awareness of Stanford and SIB's primary violation.

### C. *Plaintiffs Have Sufficiently Pled that Pershing Rendered "Substantial Assistance"*

In Texas, an aider is one who "materially aids a seller, buyer, or issuer of a security." Texas courts have interpreted this language, apparently tracking federal law, to impose liability on those who "substantially assist" a primary violation. *Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 720-721 (Tex. App. – Houston [14th Dist.] 2010, no pet.).

Plaintiffs allege that Pershing provided loan and margin financing to Stanford customers in exchange for interest payments.  In providing such assistance, Plaintiffs allege that Pershing exercised professional expertise and judgment, motivated by its own financial interests, as well as the financial interests of the Stanford Defendants.  Plaintiffs also allege that Pershing intended to lend its name and credibility to the Stanford operation by issuing various confirmations and statements to customers.  That Court finds that these allegations sufficiently plead substantial assistance under Texas law.

Texas courts have not interpreted this substantial assistance requirement often.  At least one court has stated that a failure to disclose, absent an elsewhere-arising duty, is insufficient to create liability.  *See id.*  Another found sufficient evidence of substantial assistance where the aider and abettor became CEO of the primary violator, told investors

he would make reports but failed to do so, and offered investors the opportunity to invest additional funds. *See Darocy v. Abildtrup*, 345 S.W.3d 129, 138 (Tex. App. – Dallas 2011, no pet.). Otherwise, the Court is left with only federal law and other states' case law interpreting similar statutes for guidance in interpreting the TSA's substantial assistance requirement.

Federal and other states' caselaw echos that a party is not liable under similar aiding and abetting provisions for a mere failure to disclose. *See, e.g.*, *IIT v. Cornfeld*, 619 F.2d 909, 927 (2d Cir. 1980) ("[I]naction can create aider and abettor liability only when there is a conscious or reckless violation of an independent duty to act."); *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 981 (N.Y. 2009). Further, a party does not substantially assist by engaging in only ministerial duties or routine services. *See, e.g.*, *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 29 (2d Cir. 2000) (New York law); *Bane v. Sigmundr Exploration Corp.*, 848 F.2d 579, 581-82 (5th Cir. 1988) (federal law); *Hirata Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589, 600 (S.D. Ind. 2000) (collecting state-law cases). Given this persuasive-precedent framework, Pershing argues that Plaintiffs fail to state a required element of their claims because the complaint alleges only routine services.

The Court disagrees. Pershing argues that most or all clearing brokers engage in the types of financing described in Plaintiff's complaint. But a common service is not necessarily a routine or ministerial service. *See Oppenheimer & Co., Inc.*, 130 P.3d at 588 (holding that clearing broker materially aided securities law violation by providing financing to customers); *see also Clearer Skies for Investors: Clearing Firm Liability Under the Uniform Securities Act*, 39 SAN DIEGO L. REV. 1327, 1355 (Fall 2002) ("[Activities like

margin financing] may be the normal activities of the clearing firm acting in its professional role, but that does not make the activities any less material . . . .").  And although clearing brokers may often provide financing, different brokers could use different levels of discretion in making loans, or loan on different terms, depending on the particular broker-dealer and the particular security.  The type of loan, the terms of the loan, and the level of discretion granted the clearing broker in granting the loan would all have some effect on the "substantial assistance" analysis.

The Court recognizes that other courts have found that routine financing, standing alone, is insufficient to show substantial assistance.  *See, e.g.*, *Sigmundr Exploration Corp.*, 848 F.2d at 581-82.  But here, Plaintiffs allege more than *routine* financing.  Plaintiffs not only pled that Pershing engaged in financing to customers attempting to buy Stanford CDs but also that Pershing made assessments about *whether* to process orders and execute transactions.  In making these decisions, Plaintiffs allege, Pershing used professional expertise and discretion.  In exercising this discretion, Plaintiffs allege that Pershing was motivated not only by its own financial interests but also the financial interests of Stanford and his affiliates.  Plaintiffs also allege that Pershing sought to intentionally lend credibility to the Stanford operation.  These allegations would make Pershing's actions far more than routine.  The Court thus finds these allegations sufficient to state a claim for substantial assistance.[6]

---

[6]In refusing to dismiss Plaintiffs' claim, the Court is also persuaded by the numerous state courts that consider the "substantial assistance" or "material aid" inquiry as a fact question, and thus usually inappropriate as a means for dismissal.  *See Hirata Corp.*, 193 F.R.D. at 600 (collecting cases).

## CONCLUSION

Plaintiffs have alleged sufficient facts to show that Stanford-affiliated parties were guilty of a primary violation of the TSA, that Pershing had "general knowledge" of the violation, and that Pershing substantially assisted the violation. Accordingly, the Court denies Pershing's motion to dismiss.

Signed November 14, 2012.

David C. Godbey
United States District Judge